FILED

November 17 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0383

DA 14-0383

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 325N

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

MATTHEW HEUER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 13-423A
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      James Reavis, Assistant Appellate Defender; Helena, Montana

      For Appellee:

      Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein,
Assistant Attorney General; Helena, Montana

      Edward J. Corrigan, Flathead County Attorney, Andrew Clegg, Deputy
County Attorney; Kalispell, Montana

Submitted on Briefs:   November 4, 2015
Decided:   November 17, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Matthew Heuer appeals from the order of the Eleventh Judicial District Court affirming his conviction in Justice Court for Violation of A Protective Order, § 45-5-626(3), MCA. He challenges his conviction as not supported by sufficient evidence. "In an appeal from a justice court established as a court of record, the district court functions as an intermediate appellate court and, as such, is confined to review of the record and questions of law." *State v. Hodge*, 2014 MT 308, ¶ 11, 377 Mont. 123, 339 P.3d 8 (citations omitted). "Because the scope of the district court's review and this Court's review is the same, we review the justice court's decision as if the appeal originally had been filed in this Court. . . . We examine the record independently of the district court's decision, applying the relevant standard of review." *Hodge*, ¶ 11 (citation omitted).

¶3    In January 2012, the Justice Court issued an order of protection against Heuer upon the petition of Misty Anderson, sister of Heuer's former wife. The term of the order was for five years and the order included provisions restraining Heuer from contacting or being near Anderson, and also provisions mandating that Heuer was not to "harass,

annoy, or disturb the peace" (Provision #1) or "contact, or otherwise communicate, directly or indirectly or through a third party" (Provision #5), not only Anderson, but any of her children as well.

¶4 On May 5, 2013, Heuer went to Cislo's Restaurant to dine with his two children. The busser at Cislo's, Leya Storkson-Anderson, is a daughter of Misty Anderson and a cousin to Heuer's two children. Heuer was not previously aware that Leya worked at Cislo's. Leya sat down briefly at their table and spoke with her two cousins. Leya did not report this incident because she was not sure Heuer was aware of her employment arrangements.

¶5 On June 8, 2013, Heuer returned to Cislo's with his children, who saw Leya working in the restaurant and reported this to Heuer. Leya saw Heuer and immediately went to the back of the restaurant and told two waitresses that Heuer was not supposed to be there, and they contacted Leya's boss. Leya told her boss that there was a restraining order in effect and that Heuer was not supposed to be near her. Leya's boss asked Heuer to leave the restaurant, and he did so without incident.

¶6 The State filed a charge of Violation of a Protective Order against Heuer for his actions in the June 8 occurrence. About that occurrence, the Justice Court found that Leya was afraid and that "it's clear that she felt that her peace was disturbed at that time."

¶7 Heuer argues that the State failed to support its assertions that Heuer violated Provision #1 or Provision #5 of the protective order with sufficient evidence. He argues

that, under Provision #1, "Leya testified that she had not been harassed nor had her peace been disturbed," referring to her testimony under cross examination as follows:

Q.  Were you harassed or annoyed?

A.  No.

Q.  Was your peace disturbed?

A.  No.

¶8  The parties argue over whether these two questions and answers were referring to the May 5 occurrence, or whether they were generally referring to both the May 5 and June 8 occurrences. Upon a review of the record testimony, we agree with the State that the comments were in regard to the May 5 occurrence. Although there was a short pause before these two questions were asked, they followed seriatim a line of questioning about the May 5 occurrence, specifically, the content of Leya's conversation with her two cousins on that night. After these two questions were asked, defense counsel asked Leya about the timing of a $20 tip that Heuer had left for Leya, which occurred on May 5. Following that question, defense counsel asked Leya, "Now the second time, you saw him come in, correct?", turning to the June 8 occurrence. The context clearly indicates that Leya would have believed that the questions about being disturbed were referring to the May 5 occurrence. Although the District Court, acting as an appellate court, stated Leya had testified that she did not feel threatened, harassed, or annoyed during the June 8 occurrence, and therefore concluded the Justice Court's finding that Leya was afraid that

night was not supported by the evidence, we conclude, to the contrary, that this testimony referred only to the May 5 incident, and affirm the Justice Court's finding.

¶9 About Prohibition #5, Heuer focuses on the "communication" prohibition, arguing that the State failed to introduce evidence that he made any communication with Leya by way of telephone, email, text message, social network, or other communication methods. However, Provision #5 also includes a broad prohibition on direct or indirect contact with Leya. Heuer entered a restaurant where he knew Leya worked, with his children. Leya saw him, and his children and Leya saw each other. Heuer's children reported to Heuer that Leya was working that night. Heuer remained at the restaurant. As the District Court reasoned in affirming the conviction, the contours of the order of protection "do[] not open the door for Defendant to knowingly create a situation where he would come into contact with Petitioner or her children, as he did in the instant case."

¶10 Although we reach slightly different conclusions than the District Court, we conclude there was sufficient evidence to establish that, on June 8, 2013, Heuer had indirect contact with Leya, a daughter of the petitioner of the order of protection, and that her peace was disturbed on that occasion, both in violation of the order of protection.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law and by the clear application of applicable standards of review. We affirm the District Court's order affirming the conviction.

                              /S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT